Filed 9/11/24  P. v. Saddozai CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>            Plaintiff and Respondent,<br><br>v.<br><br>SHIKEB SADDOZAI,<br><br>            Defendant and Appellant. | A166721<br><br><br>(San Mateo County Super. Ct. No. 16-NF001414A) |

In an earlier appeal, this court remanded Shikeb Saddozai's case for resentencing under Penal Code section 1385, subdivision (c)[1], which grants trial courts discretion to dismiss an enhancement in the interest of justice.  (*See People v. Saddozai* (Mar. 16, 2021, A154894) [nonpub. opn.].)  On remand, Saddozai unsuccessfully sought dismissal of a five-year enhancement for a prior serious felony conviction (§ 667, subd. (a)(1)).  He contends in this appeal that the trial court erred in declining to dismiss the enhancement.  We affirm.

### BACKGROUND

#### A.

Saddozai's convictions relate to an incident in which he stalked, burglarized, and attempted to murder his ex-girlfriend,

---

[1] Undesignated statutory references are to the Penal Code.

1

Jane Doe, days after he was released from prison in February 2016 for another offense.  (*See People v. Saddozai*, *supra*, A154894.)[2]

Doe endured years of verbal and physical abuse by Saddozai.  (*People v. Saddozai*, *supra*, A154894.)  She was able to leave the relationship after Saddozai fled the United States pending criminal charges in 2015 and was later caught and sentenced to prison.  (*Ibid*.)  While he was incarcerated, Doe sent Saddozai a letter ending their relationship, moved out of their shared home, and did not give him her new address.  (*Ibid*.)

Upon his release in 2016, Saddozai repeatedly called and texted Doe and persuaded Doe to meet him.  (*People v. Saddozai*, *supra*, A154894.)  Angry that Doe had ended their relationship, Saddozai struck Doe in the face and tried to choke her.  (*Ibid*.)  Police interrupted the attack after a bystander called 911, but they let Saddozai leave when Doe told them they were having a loud, verbal argument.  (*Ibid*.)

Using software to disguise his telephone number and voice, Saddozai subsequently persuaded Doe to tell him her address by calling her on the phone and pretending to be a police officer.  (*People v. Saddozai*, *supra*, A154894.)  He broke into her apartment and waited for Doe to come home, at which point he chased her with a knife, called her a " 'cheat,' " and yelled " 'I'm gonna get you.' "  (*Ibid*.)  Saddozai pursued Doe out of her apartment, to the building's leasing office, where Doe took refuge.  (*Ibid*.)  When Saddozai was unable to force the door open, he ran to the apartment complex's pool, where another resident saw him holding a knife and heard him repeatedly say, " 'I want to kill the bitch.' "  (*Ibid*.)

---

[2] Because the parties rely on the summary of facts contained in this court's earlier decision in *People v. Saddozai*, *supra*, A154894, we do so as well.

**B.**

A jury found Saddozai guilty of attempted willful, deliberate, and premeditated murder (§§ 664, 187, subd. (a)); first degree burglary (§ 460, subd. (a)); stalking (§ 646.9, subd. (a)); misdemeanor exhibiting a deadly weapon (§ 417, subd. (a)(1)); misdemeanor possession of burglar's tools (§ 466); and misdemeanor battery of a person the defendant formerly dated (§ 243, subd. (e)(1)). (*People v. Saddozai, supra*, A154894.) The jury also found true enhancements for use of a deadly weapon (§ 12022, subd. (b)(1)) and a prior serious felony (§ 667, subd. (a)(1)). (*People v. Saddozai, supra*, A154894.)

The trial court sentenced him to an aggregate term of 33 years to life in prison. (*People v. Saddozai, supra*, A154894) The sentence included a five-year enhancement for a prior serious felony conviction (§ 667, subd. (a)(1)), which was based on a 2002 conviction for arson. The sentence also included a one-year enhancement for use of a deadly weapon (§ 12022, subd. (b)(1)), and a one-year enhancement for a prior sexually violent offense (§ 667.5, subd. (b)).

In Saddozai's earlier appeal, this court affirmed his convictions but remanded for the trial court to determine whether to strike the five-year enhancement under amendments to section 1385. (*People v. Saddozai, supra*, A154894.)

**C.**

Section 1385, subdivision (c)(1), provides that "the court shall dismiss an enhancement if it is in the furtherance of justice to do so," unless dismissal is prohibited by an initiative statute. Section 1385, subdivision (c)(2), in turn, provides that in "exercising its discretion" to dismiss a sentencing enhancement under that subdivision, "the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the [enumerated] mitigating circumstances . . . are present." (*See*

3

*also People v. Walker* (Aug. 15, 2024, S278309) ___ Cal.5th ___
[2024 WL 3819098, pp. *1, 4] (*Walker*).)  Further, "[p]roof of the
presence of one or more of these circumstances weighs greatly in
favor of dismissing the enhancement, unless the court finds that
dismissal of the enhancement would endanger public safety.
'Endanger public safety' means there is a likelihood that the
dismissal of the enhancement would result in physical injury or
other serious danger to others."  (§ 1385, subd. (c)(2).)

Three mitigating circumstances enumerated in the statute
are relevant here.  First, where multiple enhancements are
alleged in a single case, "all enhancements beyond a single
enhancement shall be dismissed."  (§ 1385, subd. (c)(2)(B).)
Second, if an enhancement could result in a sentence longer than
20 years, "the enhancement shall be dismissed."  (§ 1385, subd.
(c)(2)(C).)  Third, the fact that an enhancement is based on a
prior conviction that is over five years old is also a mitigating
factor.  (§ 1385, subd. (c)(2)(H).)

### D.

On remand, Saddozai requested dismissal of the five-year
enhancement, relying on the mitigating circumstances in section
1385, subdivisions (c)(2)(B), (c)(2)(C), and (c)(2)(H).[3]  He
contended there was little danger to public safety given the
length of his overall sentence, and he estimated that, if the
enhancement were dismissed, he would likely not be eligible for
parole until age 63 (approximately 18 years from the
resentencing hearing).  He also asserted that, due to his physical
disabilities, including his use of a walker, "his ability to commit
certain types of offenses might be" lessened, limiting the public
safety risk.

---

[3] Saddozai conceded in trial court that dismissal of his
enhancement under section 1385, subdivision (c)(2), was "not
mandatory."

After weighing the aggravating and mitigating circumstances, the trial court concluded it would not be in the interest of justice to strike the five-year enhancement.  The court explained that Saddozai's "background, character, and prospects do not support any mitigation of his sentence." (*See* Cal. Rules of Court, rule 4.421 (circumstances in aggravation).)  The court noted that Saddozai had previous convictions for false imprisonment in a crime involving sexual assault from 2005 as well as for sexual penetration of a minor in 2015.  (*See* Cal. Rules of Court, rule 4.421(b)(1)-(2).)  The court emphasized that "[t]he instant offense was committed during the first few days after he was released from prison and put on parole." (*See* Cal. Rules of Court, rule 4.421(b)(4).)  Saddozai "showed no respect for the rights of the others in the criminal justice system.  While he was out on bail and facing trial on the sexual penetration case, he fled the country. . . .[¶] He continually violated restraining orders.  He tried to get the victim in this case . . . to commit perjury." (*See* Cal. Rules of Court, rule 4.421(a)(6), (b)(5).)  Finally, the trial court reasoned that "the facts show that he has repeatedly been, and would be if released, a threat to others." (*See* Cal. Rules of Court, rule 4.421(b)(1).)  The court noted that Saddozai had attempted to kill and terrorized Jane Doe, "had terrorized other victims in other crimes," and was described as a " 'ticking time bomb' " by his parole officer.  As a result, "if he was given the opportunity to be released into society, he will continue to victimize the victim and the community."

## DISCUSSION

Saddozai contends, and the People do not dispute, that three mitigating circumstances under section 1385, subdivision (c)(2), are applicable here because multiple enhancements were alleged, the application of an enhancement could result in a sentence longer than 20 years, and the enhancement is based on a prior conviction that is more than five years old.  (*See* § 1385,

subds. (c)(2)(B), (c)(2)(C), (c)(2)(H).)  Saddozai argues that, as a result, the trial court erred in denying his request to dismiss his enhancement.  Reviewing his legal arguments de novo (*see Walker*, *supra*, ___ Cal.5th at p. ___ [2024 WL 3819098, p. *3]), we disagree.

## A.

As an initial matter, Saddozai asserts that because mitigating factors are applicable to his case, the only remaining question under section 1385, subdivision (c)(2), is whether dismissal of the enhancement would pose a risk of physical injury or other serious danger to others.  Because he cannot be released from prison unless the Board of Parole Hearings determines he is no longer a public safety risk, he says, the trial court erred in declining to dismiss the enhancement.  But Saddozai's premise—that when a mitigating factor is present, public safety is the only remaining relevant consideration—is incorrect.

In *Walker*, our Supreme Court held that public safety is not the only consideration that may justify imposition of an enhancement when a mitigating circumstance applies under section 1385, subdivision (c)(2).  (*See Walker*, *supra*, ___ Cal.5th at pp. ___ [2024 WL 3819098, pp. *4-5].)  *Walker* explained that when a mitigating circumstance is present, the trial court retains discretion to determine whether an enhancement should be dismissed, taking into account aggravating and mitigating circumstances traditionally deemed relevant in arriving at a sentence in furtherance of justice.  (*Id*., at p. ___ [2024 WL 3819098, p. *4]; *see also* Cal. Rules of Court, rules 4.421 (circumstances in aggravation), 4.423 (circumstances in mitigation).) Section 1385, subdivision (c)(2), directs the trial court to give "great weight" to evidence that any mitigating factor is present.  (*See Walker*, at pp. ___ [2024 WL 3819098, pp. *5-6].)  As a result, the trial court "*must*" dismiss an enhancement when a mitigating factor enumerated in section 1385, subdivision (c)(2),

6

applies, unless there is substantial evidence of countervailing circumstances sufficient to outweigh the mitigating factor. (*Walker*, at pp. ___ [2024 WL 3819098, pp. *1, 5].)  Even when a mitigating circumstance is present, the ultimate question for the trial court under section 1385, subdivision (c), remains whether dismissal of an enhancement would be "in the furtherance of justice."  (§ 1385, subd. (c)(1); *see also Walker*, at p. ___ [2024 WL 3819098, p. *6].)

Here, the trial court discussed circumstances implicating several aggravating factors in addition to public safety. *Walker* permits this.  Because Saddozai does not take issue with the factors themselves, we shall not consider them further.

**B.**

Saddozai's main contention is that the trial court erred as a matter of law in denying his request to dismiss his five-year enhancement because he cannot be released unless the Board of Parole Hearings first concludes he will not endanger society if released from prison.  He maintains that, where an individual cannot be released from prison without a grant of parole, the dismissal of an enhancement has no bearing on whether the individual would pose a serious danger to others if released.  We are unable to discern any such categorical rule from the text of section 1385, subdivision (c)(2).

To be sure, review by the Board of Parole Hearings is a relevant consideration.  As *People v. Gonzalez* (2024) 103 Cal.App.5th 215 (*Gonzalez*) explains, in cases involving indeterminate sentences, the trial court should take into account the need for a grant of parole before release when determining whether dismissal of an enhancement would pose a public safety risk.  (*See id.*, at pp. 230-231.)  The fact that parole will be denied if the board determines that individuals serving indeterminate sentences "will pose an unreasonable risk of danger to society if released" (Cal. Code Regs. tit. 15, § 2281, subd. (a); *see also* Pen.

Code § 3041, subd. (b)(1)) lessens the risk that a reduced sentence will negatively impact public safety. (*See Gonzalez*, at p. 230.) Future review by the board is thus one consideration, among others, relevant to determining whether dismissal of an enhancement would endanger public safety. (*See id.*, at pp. 228-229.)[4]

But Saddozai takes it a step further. He argues that, in a case involving an indeterminate sentence, dismissal of an enhancement has zero impact on public safety because a future grant of parole would be required before release.

We find no support in the text of section 1385, subdivision (c)(2), for this contention. As *Walker* reflects, section 1385, subdivision (c), grants to trial courts the ultimate discretion to determine whether dismissal of an enhancement would advance justice. (*Walker*, ___ Cal.5th at p. ___ [2024 WL 3819098, p. *6].) The statute entrusts the decision whether dismissing an enhancement would endanger public safety to the "court," making no mention of the Board of Parole Hearings. (§ 1385, subd. (c)(2); *see also Gonzalez*, *supra*, 103 Cal.App.5th at p. 228, fn. 10 (emphasizing that "[w]e do not suggest that a trial court is permitted to delegate its judgment regarding a defendant's future threat to public safety to the Board of Parole Hearings"). And section 1385, subdivision (c), makes no reference to a bright line rule providing that dismissal of an enhancement is always consistent with public safety in cases involving indeterminate sentences. (*Cf. Walker*, ___ Cal.5th at p. ___ [2024 WL 3819098, p. *4] (noting that "[i]f the Legislature envisioned a rebuttable presumption, it could have said so . . . expressly").) Nor is the

_____

[4] Here, the trial court was well aware that Saddozai could not be released without a parole grant, as defense counsel argued at the resentencing hearing that whether the enhancement was dismissed would impact the year that Saddozai was "eligible for parole."

8

fact that the case involves an indeterminate sentence one of the mitigating factors listed in the statute.  (§ 1385, subds. (c)(2)(A)-(I).)

Under section 1385, subdivision (c), the trial court may determine, based on the defendant's background, record, and other circumstances, that a reduced sentence will not sufficiently safeguard the public because the defendant requires additional time to fully rehabilitate.  (*See People v. Mendoza* (2023) 88 Cal.App.5th 287, 299.)  Where, as here, the sentence is an indeterminate one, the defendant's particular circumstances could potentially lead the court to conclude that a longer sentence is needed for rehabilitation before a parole hearing would have any chance of a successful outcome.

We therefore reject Saddozai's contention that, as a matter of law, the trial court erroneously "assumed that its decision whether to dismiss the . . . enhancement would have some bearing on whether [Sadozzai] would pose a danger to public safety at some point in the future."

## DISPOSITION

The judgment is affirmed.

BURNS, J.

WE CONCUR:


JACKSON, P. J.
SIMONS, J.

*People v. Saddozai (A166721)*